WO                                                                                                              **JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Eldon Rogers, ) | No. CV 07-0142-PHX-MHM (JRI) |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Dora B. Schriro, et al., ) | |
| Defendants. ) | |

Before the Court are Defendants' Motion for Summary Judgment and Plaintiff's Response (Doc. ## 68, 75). The Court will grant Defendants' motion and dismiss this action without prejudice.

**I.    Background and Procedural History**

Plaintiff filed his original Complaint in this 42 U.S.C. § 1983 action on January 10, 2007 (Doc. # 1). Plaintiff's Second Amended Complaint (SAC) was filed on August 27, 2007, and presented five claims for relief against thirteen Arizona Department of Corrections (ADC) employees (Doc. # 37). Plaintiff named the following Defendants: (1) ADC Director Dora Schriro; (2) Deputy Director Charles Ryan; (3) Warden Greg Fizer; (4) Deputy Warden Howard Kinsler; (5) Warden Cluff; (6) Deputy Warden Schuster; (7) Associate Deputy Warden Rivas;[1] (8) Corrections Program Supervisor IV Bock; (9) Correctional Officer (CO)

---

[1] While Plaintiff identified Rivera, the correct spelling is Rivas (Doc. # 90).

1

III Hayes; (10) Warden Trujillo; (11) Deputy Warden Martinez; (12) Associate Deputy Warden McMacken; and (13) Deputy Warden Toersbijn (id.). In Count I, Plaintiff alleged that Schriro subjected him to cruel and unusual punishment through overcrowded conditions at the Tucson/Winchester and Eyman/Cook Units of the Arizona State Prison Complex (id. at 3-3D). In Count II, Plaintiff claimed that Schriro housed him with violent gang members, constituting deliberate indifference to his safety (id. at 4-4A). In Count III, Plaintiff alleged that all of the Defendants subjected him to cruel and unusual punishment through overcrowded conditions and by housing him with gang members, predators, and violent seriously mentally ill prisoners (id. at 5-5A). In Count IV, Plaintiff claimed that he was attacked on July 7, 2005, because Schriro, Ryan, Fizer, and Kinsler were deliberately indifferent to unsafe conditions at the Tucson/Winchester Unit (id. at 6-6C). And in Count V, Plaintiff alleged that: (1) Cluff, Shuster, and Rivas failed to control gang members and other predator inmates; (2) Bock knowingly transferred Plaintiff to the Buckley Unit containing a gang member with a grudge against Plaintiff; and (3) Hayes started a rumor that Plaintiff was a snitch, resulting in threats on his life (id. at 7-7A). All thirteen Defendants were ordered to answer the SAC (Doc. # 36 at 7).[2]

Defendants have now moved for summary judgment on the grounds that (1) Plaintiff did not exhaust his administrative remedies, (2) Plaintiff's generalized complaints about overcrowding and violence do not state Eighth Amendment violations, and (3) Count V is barred by the statute of limitations (Doc. # 68 at 3-10). In support of their motion, Defendants submit excerpts from Plaintiff's deposition and a copy of the ADC grievance procedure, Department Order (DO) 802 (Doc. # 69, Exs. A, B).[3]

---

[2] Martinez has not yet been served.

[3] The DO provides a four-step standard-grievance process, which is generally as follows: (1) an inmate must submit an inmate letter to his assigned Correctional Officer (CO) III, attempting to informally resolve a complaint; (2) an inmate may then file a formal grievance to the Grievance Coordinator; (3) an inmate may then file a grievance appeal to

2

1  Plaintiff was informed of his right and obligation to respond to Defendants' motion
2  (Doc. # 70).[4] This warning explicitly provided that a party opposing summary judgment
3  must produce evidence including affidavits and other sworn statements to refute the moving
4  party's motion (id.). In his response, Plaintiff contends that the legal material available to
5  inmates at the ADC is insufficient to respond to Defendants' summary judgment motion and
6  therefore seeks the appointment of counsel (Doc. # 75 at 1).[5] Plaintiff further claims that he
7  was "excluded" from the grievance process (id. at 3). Finally, Plaintiff claims that he has
8  been unable to obtain copies of his medical records or other documents that support his
9  claims (id.).

10  Defendants did not file a Reply.

11  **II.  Legal Standards**

12  **A.  Summary Judgment**

13  A court must grant summary judgment if the pleadings and supporting documents,
14  viewed in the light most favorable to the non-moving party, "show that there is no genuine
15  issue as to any material fact and that the movant is entitled to judgment as a matter of law."
16  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under
17  summary judgment practice, the moving party bears the initial responsibility of presenting
18  the basis for its motion and identifying those portions of the record, together with affidavits,
19  which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp.,
20  477 U.S. at 323. If the moving party meets its initial responsibility the burden then shifts to
21  the opposing party who must demonstrate that the fact in contention is material, i.e., a fact

---

a higher official—the Deputy Warden or Warden; and (4) an inmate may then appeal to the ADC Director (Doc. # 69, Ex. B).

[4] Notice required pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*).

[5] To the extent that Plaintiff's response seeks the appointment of counsel, that request is denied.

1  that might affect the outcome of the suit under the governing law, Anderson v. Liberty
2  Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is
3  such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250; see
4  Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The opposing
5  party need not establish a material issue of fact conclusively in its favor; it is sufficient that
6  "the claimed factual dispute be shown to require a jury or judge to resolve the parties'
7  differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391
8  U.S. 253, 288-89 (1968).

9  When considering a summary judgment motion, the court examines the pleadings,
10 depositions, answers to interrogatories, and admissions on file, together with the affidavits,
11 if any. See Fed. R. Civ. P. 56(c). The evidence presented by the parties must be admissible.
12 Fed. R. Civ. P. 56(e). And the evidence of the non-movant is "to be believed, and all
13 justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

14 **B.  Exhaustion**

15 A prisoner must first exhaust "available" administrative remedies before bringing an
16 action. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir.
17 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the
18 administrative review process in accordance with the applicable rules. See Woodford v.
19 Ngo, 126 S. Ct. 2378, 2384 (2006). Exhaustion is required for all suits about prison life,
20 Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through
21 the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

22 Exhaustion is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 919-21 (2007).
23 Defendants bear the burden of raising and proving the absence of exhaustion. Wyatt v.
24 Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Further, exhaustion is a matter of abatement
25 in an unenumerated Rule 12(b) motion. Id. at 1119-20. Although the Ninth Circuit
26 recognized that a matter in abatement is "closely analogous" to summary judgment, the
27 appellate court noted two main differences: (1) summary judgment is on the merits but
28

4

1 exhaustion is not; and (2) summary judgment does not permit the court to resolve disputed
2 issues of fact but exhaustion does. Id. at 1119-20 n.14. When an exhaustion issue is raised
3 in a motion for summary judgment, the court should treat it as an unenumerated motion under
4 Rule 12(b). Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368-69
5 (9th Cir. 1988). Therefore, to the extent that Defendants seek summary judgment on the
6 issue of exhaustion, the Court will construe Defendants' motion as an unenumerated motion
7 under Rule 12(b).

8 Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion,
9 a court may look beyond the pleadings to decide disputed issues of fact. Wyatt, 315 F.3d at
10 1119-20. Further, a court has broad discretion as to the method to be used in resolving the
11 factual dispute. Ritza, 837 F.2d at 369 (quotation omitted).

12 **III. Analysis**

13 **A. Exhaustion**

14 As stated, Defendants bear the burden of proving the absence of exhaustion. Wyatt,
15 315 F.3d at 1119. Defendants contend that the grievance system was available to Plaintiff
16 for all of the claims in his SAC, but he failed to file any grievances as to any of those claims
17 (Doc. # 68 at 6). In both his SAC and in his response, Plaintiff acknowledges that he did not
18 fully exhaust the claims in his SAC (Doc. # 37 at 8; Doc. # 75 at 2). Rather, Plaintiff makes
19 several arguments in support of his claim that he was not required to exhaust: (1) he was not
20 aware of the grievance procedure, rendering it unavailable; (2) his claims are "continuing"
21 and therefore exhaustion is not required; (3) he was "excluded" from the grievance process;
22 and (4) because the grievance process does not provide monetary relief, he did not grieve his
23 claims.

24 Plaintiff's arguments are entirely unavailing. First, Plaintiff does not dispute that a
25 copy of the ADC's grievance procedure is available at every housing unit for all inmates
26 (Doc. # 69 ¶ 10). Moreover, Plaintiff's claim that he did not know about the grievance
27 procedure is belied by the record because he acknowledged in his deposition that he wrote

28

5

1  inmate letters—the first step in the grievance procedure—about some of the issues presented
2  in his SAC (Doc. # 69, Ex. A, Pl. Dep. 53:17; 74:13-19). The Court, therefore, cannot
3  conclude that Plaintiff did not know of the grievance process.

4  Plaintiff also contends that his claims are "continuing" and therefore not subject to the
5  grievance process. This contention is unsupported by any evidence. And indeed, if
6  Plaintiff's claims are ongoing, as he claims, he could have utilized the grievance process at
7  any time, but failed to do so. Further, Plaintiff argues that his claims are related to
8  classification and are not grievable. But Plaintiff's claims are not based on his classification.
9  Rather, they are based on the conditions of his confinement (overcrowding and failure to
10 protect), issues that are expressly permitted by the ADC's grievance procedure (Doc. # 69,
11 Ex. B at DO 802.01 § 1.1.1). And, indeed, Porter makes clear that all claims regarding
12 prison life must be exhausted before filing suit. 534 U.S. at 532.

13 Nor has Plaintiff offered any specific information about how he was "excluded" from
14 the grievance process (Doc. # 75 at 2). He does not articulate when he attempted to use it,
15 or what claims he tried to present, or what he was specifically told that hindered his ability
16 to file grievances. As a result, the Court cannot conclude that the grievance process was
17 "unavailable" to Plaintiff such that he was not required to utilize it. Brown, 422 F.3d at 934-
18 35.

19 Finally, Plaintiff alleged in his SAC that because the grievance system does not
20 provide monetary relief and staff members have antipathetic attitudes toward inmates,
21 Plaintiff felt as though he "would be signing his own death warrant" if he attempted to grieve
22 his claims (Doc. # 37 at 8). But the Ninth Circuit has made clear that "[a] prisoner must
23 exhaust administrative remedies even when the prisoner's suit seeks monetary damages that
24 are unavailable through the prison's grievance process." O'Guinn v. Lovelock Corr. Center,
25 502 F.3d 1056, 1061 (9th Cir. 2007). And Plaintiff offers no specific information regarding
26 his fear of using the grievance process. In sum, the grievance process was available to
27 Plaintiff for all the issues in his SAC, but Plaintiff simply failed to utilize it. Consequently,
28

6

Defendants' motion will be granted, Counts I-V will be dismissed for failure to exhaust, and the Court need not reach Defendants' remaining arguments.

**IT IS ORDERED:**

(1) Defendants' Motion for Summary Judgment (Doc. # 68) is **GRANTED**.

(2) This action is dismissed without prejudice and the Clerk of Court must enter judgment accordingly.

DATED this 22nd day of December, 2008.

_____
Mary H. Murguia
United States District Judge